FORBURGER STONE COMPANY, APPELLEE, V. LION BONDING
& SURETY COMPANY, APPELLANT.

FILED FEBRUARY 15, 1919.    No. 20273.

1. **Principal and Sureties:** ACTION BY MATERIALMEN: PARTIES.  One
who has furnished labor or material used in the construction of
a building can maintain an action against the contractor and his
sureties who have agreed with the owner to pay for the same.

2. **Contracts:** BUILDING CONTRACT: CONSIDERATION: MATERIALMEN.  In
such case, the contract with the owner of the building is dual
in its nature, and the agreement to pay laborers and material-
men is distinct from the contract to erect the building.  The
building contract is the consideration for the agreement to pay
laborers and materialmen.

3. ——: ——: RIGHTS OF MATERIALMEN.  And, in such case, when
the rights of the laborer or materialman are fixed by furnishing
the labor or material used in the building, no act or neglect
of the contractor will defeat such rights.

APPEAL from the district court for Lancaster county:
FREDERICK E. SHEPHERD, JUDGE.  *Affirmed.*

*A. G. Wolfenbarger* and *Ross P. Anderson,* for ap-
pellant.

*Burkett, Wilson & Brown,* contra.

SEDGWICK, J.

1.  A building contractor entered into a contract to
construct a building, and gave a bond for the faithful
performance of the contract.  This defendant was
surety on the bond.  The plaintiff furnished material
to the contractor which was used in the construction
of the building, and he brought this action against the
surety on the bond to recover the value of the material.
The bond required the contractor to perform all of the
conditions of his contract, and one of the conditions of
his contract was that he should pay for all the mate-
rials which he used in the building.  Therefore, this
contractor's bond contained an agreement for the bene-

fit of this plaintiff, and it has been frequently held by this court that, under such circumstances, a party for whose benefit the contract was made can maintain an action directly against the party who has contracted for his benefit. *Doll v. Crume,* 41 Neb. 655, and cases cited, and various other decisions of this court are to this effect.

2. This bond contained the following provision: "That the said surety shall be notified in writing of any act on the part of said principal, which shall involve a loss for which the said surety is responsible hereunder, immediately after the occurrence of such act shall have come to the knowledge of the duly authorized representative or representatives of the obligee herein, who shall have the supervision of the completion of said contract." It is conceded that no notice was given the surety as provided in the bond, and the serious, and perhaps difficult, question in this case is whether the third person, who is a beneficiary under this contract, can recover without having given the notice specified. In *Doll v. Crume, supra,* it was held: "That the contract between the city and Davis (the contractor) and his sureties, and the promises and liabilities of the latter thereon, were of a dual nature—a promise to the city that Davis should perform the work in the time and manner he had agreed, and a promise, in effect, to Crume to pay him for the labor he should perform for Davis." This proposition of law is discussed at length in the opinion. In *Knight & Jillson Co. v. Castle,* 172 Ind. 97, 27 L. R. A. n. s. 573, it was held that under a similar contract the beneficiary could not recover without having given the notice provided for in the contract. The note in the L. R. A. is exhaustive, in which it is said: "A contractor's surety bond to a public corporation is dual in its nature, being for the benefit and protection of the obligee against loss or damage from a failure of the contractor to perform his contract, and also for the

benefit of laborers and materialmen who do work and furnish materials in the performance of the contract. And when the rights of the latter are once fixed, no act of the corporation will destroy or impair them''— and cites our case of *Doll v. Crume, supra,* and other authorities upon this proposition. In *Doll v. Crume, supra,* the contract was with a public corporation, but the opinion does not consider that fact as material, as would be seen from a reading of the opinion, in which it is said: ''Suppose that Davis (the contractor) had borrowed $100 for 90 days from a bank, and given his note therefor, which note had been signed by the plaintiffs in error as sureties. Now if the bank, without the knowledge of the plaintiffs in error, had extended the time of the payment of this note, then such extension would have released the sureties from liability thereon; but in the case supposed, if at the time Davis borrowed the money plaintiffs in error had promised the bank that, in consideration of its lending the money to Davis, they would pay a debt of $10 which he owed to C., then any agreement between Davis and the bank for an extension of the time of payment of the note would not affect C.'' That is to say, that the surety on the contractor's bond has agreed that the contractor will pay the materialman. The contractor, of course, was under obligation to pay the materialman, and the contract, being for the benefit of the materialman, is distinct, according to the authority of this decision, from the contract that the contractor shall perform his work as he agreed to do. There are two contracts— one that the materialman shall be paid, and the other that the contractor shall perform his contract with the owner of the property. The entering into the contract with the contractor by the owner is the consideration for the agreement to pay the materialman for the material. In the L. R. A. note, above referred to, it is said that the decisions are not unanimous, and ''a majority incline to hold that such conduct (conduct

of the nominal obligee) does not and cannot affect them (the materialmen) after their rights become fixed.'' The rights of laborers and materialmen to be paid for their labor and material are ''fixed'' when they have faithfully performed the labor or furnished the material; and, under these decisions, no failure of the contractor thereafter can invalidate the rights so fixed. That the duty to give the specified notice is placed entirely upon the obligee named in the contract, and relates only to his performance of the work he has contracted to do, appears from the words of the contract. The surety is to be notified ''of any act on the part of said principal * * * immediately after the occurrence of such act shall have come to the knowledge of'' the representatives of the obligee ''who shall have the supervision of the completion of said contract.'' This plaintiff did not have any representative in this business, and neither the plaintiff nor any one for him had supervision of the completion of the contract. The plaintiff could not know when some act of the contractor came to the knowledge of the owner of the building. It would be impossible for the plaintiff to give the notice to the surety. Laborers and materialmen are in the same position with respect to such contracts. If a laborer who has performed a few days' work for the contractor would be in danger of losing his wages unless he keeps himself posted as to the doings of the contractor and the owner of the building, and sees that they perform their respective duties, he would not be protected as perhaps sound public policy would require.

As said in *Des Moines Bridge & Iron Works v. Marxen & Rokahr*, 87 Neb. 684: ''It is better that the law with respect to contracts should be certain than that it should in all particulars conform to the views of the courts of some of our sister states. The defendants in the case at bar must have contracted with reference to the law as announced in the cited cases,

and the defendant bonding company must have known that it was assuming an obligation to pay the subcontractors and materialmen as well as the laborers and mechanics engaged in constructing the courthouse referred to. The plaintiff in contracting to furnish material for the courthouse also had a right to rely upon the law repeatedly stated by this court, and should not be deprived of the defendants' obligation to pay for that material because a like bond could not be enforced in the state of New York. We are not convinced that we should overrule a long line of our decisions, and shall not to do so in the instant case." That was an action for material furnished a contractor for a public building, and was before the statute making the contractor's bond responsible for materials (Laws 1913, ch. 170), and yet it is said: "The defendant bonding company must have known that it was assuming an obligation to pay the subcontractors and materialmen as well as the laborers and mechanics engaged in constructing the courthouse referred to."

We think that, under our former decisions, the parties interested must know that the surety on a contractor's bond, in which it is agreed that the contractor will pay laborers and materialmen, is directly liable for labor and material used by the contractor in the construction of the building under his contract; and we think we ought to adhere to that principle.

The judgment of the district court is

AFFIRMED.

ALDRICH, J., dissents.

LETTON, J., concurring.

The basis of the conclusion reached by the majority of the court in this case is, that the bond in question contains a dual obligation, and that the obligee named in the bond is, as to laborers and materialmen, a mere trustee. Under the settled law of this state, it is immaterial whether such a bond is executed in pursuance of a statute, or whether it is a mere common-law bond.

*Sample & Son v. Hale,* 34 Neb. 220; *Lyman v. City of Lincoln,* 38 Neb. 794; *Doll v. Crume,* 41 Neb. 655; *Korsmeyer Plumbing & Heating Co. v. McClay,* 43 Neb. 649; *Kaufmann v. Cooper,* 46 Neb. 644; *Fitzgerald v. McClay,* 47 Neb. 816; *King & Co. v. Murphy,* 49 Neb. 670; *Rohman v. Gaiser,* 53 Neb. 474; *Nye-Schneider-Fowler Co. v. Bridges, Hoye & Co.,* 98 Neb. 27.

The bond contains two contracts, one with the owner, and the other for the benefit of those who supply labor or materials. "The surety becomes bound for the performance of the work by the principal in accordance with the stipulations of the contract, and for the prompt payment of the sums due to all persons supplying labor and material in the prosecution of the work provided for in the contract." *Equitable Surety Co. v. United States,* 234 U. S. 448, 34 Sup. Ct. Rep. 803. The laborers and materialmen are the beneficiaries in the bond. A majority of the courts take the view that the conduct of the nominal obligee cannot affect their rights after the same are once fixed. 27 L. R. A. n. s. note on pages 596 *et seq.*

The purpose of the bond would be defeated so far as the beneficiaries are concerned if, by some act or omission on the part of the obligee named therein, their rights should be destroyed. Their right of action, as said in *Getchell & Martin Lumber & Mfg. Co. v. Peterson & Sampson,* 124 Ia. 599, 615, "is not derived from, nor held under, the owner of the building, but is an independent right, of which they are not to be deprived save by their own act or default."

The following cases, in addition to the cases cited from this court, are in point upon the question whether any act or omission of a nominal obligee may release the surety as to laborers or materialmen for whose benefit such a provision is made in the contract. *Texas & P. R. Co. v. Eason,* 92 Fed. 553; *United States Fidelity & Guaranty Co. v. Omaha Building & Construction Co.,* 116 Fed. 145; *Griffith v. Rundle,* 23 Wash.

453; *School District v. Livers*, 147 Mo. 580; *Kansas City v. Schroeder*, 196 Mo. 281; *Federal Union Surety Co. v. Commonwealth*, 139 Ky. 92; *United States Fidelity & Guaranty Co. v. American Blower Co.*, 41 Ind. App. 620. See, also, cases cited in note VII, 27 L. R. A. n. s. 581-595.

The surety company entered into this contract with full knowledge and notice of the laws of this state as declared by the decisions of this court, and should abide by its terms.

. CORNISH, J., dissenting.

The fact that the beneficiary is a laborer or materialman can, I take it, make no difference. If public policy or the status of laborers or materialmen is to give them rights superior to other beneficiaries under similar circumstances, the opinion should make that clear and tell the reason why.

What right can an entire stranger to a contract have in it? The English and Massachusetts courts say none. The contractual relation requires a meeting of minds and a consideration. Hence, only the parties or privies to a contract can enforce it, say they.

When the contract's promise is to save the promisee from a possible loss, it may easily happen that its enforcement will be directly beneficial to a third person, because the promisee's loss, provided against, may be the promisee's liability to the third person. Many courts, including this, have, in such case, enforced the contract at the suit of the third party (beneficiary), the same as if he were a promisee or obligee named in the contract. They have likened the case to novation. Really, the right comes to the stranger to the contract by a sort of unexpected grace. The liability of the obligor to him can hardly be said to be contractual. The courts see in the situation and relation of the parties a duty which the promisor ought not to refuse to perform, and they permit to be done by direct means the

thing that would ordinarily come about anyhow by in-
direct means.

Just as the stream can never rise higher than its
source, nor the less include the greater, nor the acci-
dental be more regarded than the intentional, nor one
reap where he has not sown, so the promisor is never
bound to more than his promise, and the stranger to
the contract can have no better nor higher rights in the
contract than the parties to it. He gets any possible
right he may have through the promise made to the
obligee, and that is the promise that must be left as
made and only as made.

Such has been the holdings of these courts.

In this opinion we are announcing the law to be:
That an entire stranger to a contract, who (probably)
did not know of it when made, for whose fortunes
neither of the parties cared except as his own interest
might be affected, who never did a thing in reliance on
the contract (save commencing this action), who paid
no consideration for a promise, to whom none was made
and who made none himself, may, notwithstanding
these facts (undisputed), not only recover on the con-
tract, but recover regardless of its conditions.

Is there any precedent for this? None. In *Getchell
& Martin Lumber & Mfg. Co. v. Peterson & Sampson*,
124 Ia. 599, cited, the promise was made in words to
the third party as well as to the principal obligee, and
the opinion states that material was furnished in re-
liance upon the promise.

In statutory bond cases the law makes the laborer and
materialman, in terms, a party to the contract in his
own, separate and independent right.

Municipal bond cases are distinguishable in this:
The officials act in a representative capacity; the
laborer or materialman has no lien for his protection.
He should be protected by the municipality who gets
the benefit of his work. It does no extreme violence
to the contract to say that the parties must have in-

103 Neb.—14

tended his protection as the main purpose of the bond, that the city was acting as his agent, and that a promise was made to him, just as subsequently enacted statutes provide. 21 R. C. L. p. 1016, sec. 64.

In the instant case, no contention can be made but that the contract is a private contract, the parties at the time owing no duty to any third person.

Under the rule announced, if A, having faith in the character and ability of young Mr. B, who is seeking employment under C, promises C that, if he employs B, B will make the payments of funds coming into his hands from time to time to the persons to whom the funds should go, on the perfectly reasonable condition, however, that when C learns of a default of B he will inform A, and, if afterwards C neglects to give A the information of B's default, which he knows, so that A is released from his promise to C, still A is liable to the persons to whom the payments should have been made by B. When one of such persons sues as beneficiary, and A sets up the promise that he should be notified of defaults, and shows that, with notice, he could have saved half, or all, of the loss, we are holding that the third person (beneficiary) makes a good reply as follows: "How could you expect me to give you notice? I never knew of your contract with B until immediately before commencing this action."

It seems to me that the reasoning is unsound and the conclusion unjust. No court will adhere to the rule in its general application. The entertaining of doubts about a proposition, plain and simple in itself, always invites confusion. We should pray to be delivered from temptation to do so. Hard cases make bad law.

When the meaning of a valid contract is plain, *that* is the *law* of the contract. When courts go contrary to its intent, they legislate. Once we agree that the promise defendant made to the obligee was that the

contractor would make the payments, and that promise was on condition that defendant should be notified by the obligee of defaults, there is no need for discussion.

But is there room for good-faith dispute that such was the promise made in terms only to the obligee and that notice was not given? One might, with some show of equity, argue (as has been held in certain insurance cases) that the condition precedent ought not to defeat plaintiff's recovery unless the obligee's breach damaged defendant. This contention, however, is not made. The defendant can complain: "I am held, contrary to the only promise I made, which was to the obligee, to save him harmless upon condition."

The argument by analogy quoted in the opinion from *Doll v. Crume,* 41 Neb. 655, can have no possible application here. Here the promise, that "$10 which he owed to C" would be paid is unquestionably coupled with a condition, and is not absolute as in the supposed case. Besides, in the analogy quoted, the argument assumes A's promise to C, made to the municipality as his agent or representative. In the case in hand, it cannot be said that more than one contract, more than one promise (which is what the opinion probably means), or more than two parties to the contract, were contemplated.

The right of the citizen to freely contract, and to be held only in accordance with his promise as made, is one of the foundations and safeguards of civil liberty.

DEAN, J., dissenting.

Plaintiff pleaded the bond and offered it in evidence, but it entirely ignored the requirement respecting notice. To state it another way: Plaintiff elected to accept the benefits of the contract sued on, but it repudiated its burdens. The situation is anomalous.

The surety bond contains this condition: "Provided, that the said surety shall be notified in writing of any act on the part of said principal, which shall involve a loss for which the said surety is responsible hereunder,

immediately after the occurrence of such act shall have come to the knowledge of the duly authorized representative or representatives of the obligee herein, who shall have the supervision of the completion of said contract, and a registered letter mailed to the surety, at its principal office in Omaha, Nebraska, shall be deemed sufficient notice within the meaning of this bond."

The obligee named in the bond is a private corporation. The only contested point is whether service of notice by plaintiff, also a private corporation, on the surety as specified in the foregoing provision of the bond is a condition precedent to its right to recover. The bond is primarily for the benefit of the owner who is the sole obligee named therein. Fairly construed the bond requires plaintiff to perform the condition as to notice, because plaintiff stands in the place of and derives its rights under the bond from the obligee, and it follows can have no other or greater rights than the obligee. The consideration that supports plaintiff's right to recover is that such recovery operates to release the obligee, the owner, from some contingent liability to the third party, in this instance the plaintiff. 71 Am. St. Rep. note at page 189 (*Baxter v. Camp,* 71 Conn. 245); *Frerking v. Thomas,* 64 Neb. 193.

In *Barnett v. Pratt,* 37 Neb. 349, Judge Irvine concisely states the reason for the third party rule: "The purpose of the American rules seems to have been largely to avoid circuity of action. It may probably be assumed that, in order to permit such third person to sue, the contract must be one which might be enforced between the immediate parties thereto; in fact, many of the cases state the rule in these terms." In 2 Elliott, Contracts, sec. 1415, it is said: "One is not entitled to the benefits of a contract made in his behalf without complying with the conditions and assuming the liability that the original parties have attached thereto. The rights of a party for whose benefit a

promise is made must be measured by the terms of the agreement between the principal parties.''

The present case is distinguished from one where a surety bond is given by a contractor to a municipal corporation as in *Doll v. Crume,* 41 Neb. 655, and *Des Moines Bridge & Iron Works v. Marxen & Rokahr,* 87 Neb. 684, that are cited in the majority opinion. Both cases were suits on surety bonds given to guarantee the performance of building contracts entered into between building contractors and municipal corporations. Clearly they are not in point. In the *Doll* case it is said that a surety bond that guarantees the performance of a building contract entered into with a municipal corporation is dual in its nature; that there is a promise both to the municipality and to materialmen. It is at once apparent that this is on grounds of public policy. 21 R. C. L. 1016, sec. 64; *Equitable Surety Co. v. United States,* 234 U. S. 448. It is obvious that if the rule were otherwise, as applied to municipal corporations, the third party would be remediless because it is not permissible in this class of cases that the citizen should have a lien on the property of the sovereign. It seems that duality of contract has not been recognized as the principle that permits the third person who is not a party to a contract to sue upon it, except in municipal corporation cases. The general principle that permits a third party to sue is that a recovery will release the promisee from some liability to the third party, thus avoiding circuity of action.

The majority opinion exonerates plaintiff from giving notice because: ''The plaintiff could not know when some act of the contractor came to the knowledge of the owner of the building. It would be impossible for the plaintiff to give the notice to the surety.'' It is not altogether clear upon what theory the majority conclude, in an entire absence of pleading or proof to support the conclusion, that the plaintiff could not bring

Forburger Stone Co. v. Lion Bonding & Surety Co.

"some act of the contractor" relating to nonpayment "to the knowledge of the owner of the building." What was there to prevent plaintiff from informing the owner that the contractor was in default? Who knew better than plaintiff as to the time when the contractor failed to pay for the building stone? Who but the plaintiff, whose knowledge was first hand, would be expected to bring the fact of nonpayment "to the knowledge of the owner of the building?" Nor is it clear why, in the absence of proof, the court should conclude that there was something or that there was anything that made it "impossible for the plaintiff to give the notice to the surety."

Under a fair construction of the surety bond, and on principle and on authority, notice of the failure of the contractor to pay plaintiff should have been communicated by plaintiff to "the duly authorized representative or representatives of the obligee" having "supervision of the completion of said contract," or to the owner itself. And in the event of the refusal or failure of the representative or of the owner to serve the required notice, plaintiff, standing in the place of the obligee, itself should have served the notice on the surety. Failing in this it should have been nonsuited. Notice in this class of cases is not an idle ceremony, but a matter of prime importance, a material part of the contract: Notice would have enabled the surety to have stopped the payment or to have caused the owner to pay plaintiff instead of paying the defaulting contractor. The provision for notice is reasonable, merely providing that "a registered letter mailed to the surety, at its principal office in Omaha, Nebraska, shall be deemed sufficient notice within the meaning of this bond." And this the majority opinion concludes was impossible of performance by plaintiff. Escape from a plainly expressed obligation of a contract should not be permitted upon a pretext so trivial.

The majority opinion cites no authority involving the question of notice that supports its conclusion. It may therefore be assumed that, aside from the majority opinion, there is no such authority. In 21 R. C. L. 986, it is said: "To entitle a materialman to maintain an action on the contractor's bond, he must comply with a provision of the bond that notice in writing must be given to the surety of any act which may involve a loss for which the surety may be liable a certain time after the occurrence of the act, and the failure of a materialman to give such notice is not a matter of defense to an action on the bond, but he has the burden of showing compliance to make out his cause of action." *Knight & Jillson Co. v. Castle,* 172 Ind. 97, 27 L. R. A. n. s. 573, is a leading case in point, and in which the reason for the rule requiring notice is admirably stated: "In adopting a part of the obligation as running to it, appellant was bound to adopt it according to its terms and conditions, upon the plainest principles of construction. In the absence of an agreement for time, the price of materials purchased by the contractor was due when delivery was made; if time was given, the price was due at the expiration of the time agreed. In either event, it was peculiarly within the knowledge of the appellant as to when the obligation was due which is here sought to be enforced against the surety, and there could be no adoption of so much as was favorable to appellant, and that which was for the benefit of the surety be ignored."

Men must be left free to make their own contracts, and in the absence of fraud or mistake the binding obligation of a lawful contract cannot be too insistently urged. The progress toward the attainment of a high type of civilization has been marked by an observance of this principle. The fathers of the Republic thought it worth while to provide that no state shall pass any law impairing the obligation of contracts. Doubtless those venerated men presumed that a general admonition on this point was sufficient.