MANSFIELD LUMBER COMPANY v. NATIONAL SURETY
COMPANY.

Opinion delivered April 16, 1928.

1. MECHANICS' LIENS—CONTRACTOR'S BOND.—A bond given by a con-
tractor binding principal and surety to indemnify the owner
against claims for labor and material, not having been approved
by the clerk of the circuit court, nor filed in the clerk's office as
required by Crawford & Moses' Dig., §§ 6915, 6916, held not a
statutory bond.

2. MECHANICS' LIENS—CONTRACTOR'S BOND.—A bond by a contractor
providing that such contractor should satisfy all claims and
demands incurred under contract and indemnify the owner against
all costs incurred by him, and providing that the surety shall
pay all persons having contracts for labor or material, held for
the benefit of the owner and materialman and laborers, though
not a statutory bond, and imposed liability on the surety for
the costs of materials furnished in constructing the building.

Appeal from Sebastian Circuit Court, Fort Smith
District; *J. Sam Wood,* Judge; reversed.

*Dobbs & Young,* for appellant.

*Warner, Hardin & Warner,* for appellee.

SMITH, J. Appellant, the plaintiff below, alleged
the following facts as constituting a cause of action
against appellee, the defendant below.

Plaintiff is a corporation engaged in selling build-
ing material, and the defendant Rambo-Miller Construc-
tion Company is a partnership doing business as a
construction company, and the defendant National
Surety Company is a corporation doing a surety and
indemnity business. On June 12, 1926, the defendant
Rambo-Miller Construction Company, hereinafter
referred to as the construction company, entered into a
building contract with a committee of the First Baptist
Church of Fort Smith to construct certain improvements
on the church building, which bound the construction
company to furnish all labor and material in the con-
struction of said improvement. In conformity with the
contract, the construction company entered into a bond
with the National Surety Company, hereinafter referred

to as the surety company, as surety. So much of the bond as is necessary to consider here reads as follows:

"Know all men: That we, Rambo-Miller Construction Company, of Fort Smith, Arkansas, hereinafter called the principal, and National Surety Company, hereinafter called the surety or sureties, are held and firmly bound unto the First Baptist Church of Fort Smith, Arkansas, hereinafter called the owner, in the sum of $35,000, for the payment whereof the principal and surety or sureties bind themselves, their heirs, executors, administrators, successors and assigns, jointly and severally, firmly, by these presents:

"Whereas, the principal has, by means of a written agreement dated June 12, 1926, entered into a contract with the owner for the furnishing of all labor and material and the construction of a Sunday-school building and alterations and enlargement of the church auditorium, a copy of which agreement is by reference made a part hereof. Now therefore the condition of this obligation is such that, if the principal shall faithfully perform the contract on his part and satisfy all claims and demands incurred for the same, and shall fully indemnify and save harmless the owner from all cost and damage which he may suffer by reason of failure so to do, and shall fully reimburse and repay the owner all outlay and expense which the owner may incur in making good any such default, and shall pay all persons who have contracts directly with the principal for labor or materials, then this obligation shall be null and void; otherwise it shall remain in full force and effect. Provided, however, that no suit, action or proceeding by reason of any default whatever shall be brought on this bond after six months from the day on which the final payment under the contract falls due."

Plaintiff further alleged that, after the execution of the bond, the construction company purchased from it certain building material to be used in the construction of the improvement, and that, in reliance upon said

bond, plaintiff sold and delivered material to the construction company of the value of $568.70. An itemized statement of the material furnished was made an exhibit to the complaint. The construction company failed to pay for the material, as did also the surety company, upon demand, wherefore judgment was prayed against both the construction company and the surety company.

A demurrer was filed to this complaint by the surety company, which was sustained by the court, and, plaintiff refusing to plead further, the complaint against the surety company was dismissed, and this appeal is from that judgment.

It was held by this court, in the case of *Thomas Mfg. Co.* v. *Prather,* 65 Ark. 27, 44 S. W. 218, that, where a promise is made to one upon a sufficient consideration for the benefit of another, the beneficiary may sue the promisor for a breach of his promise, and that holding has since been adhered to by this court. *Stewart-McGehee Construction Co.* v. *Brewster, etc. Mfg. Co.,* 171 Ark. 197, 284 S. W. 53. The question presented for decision is therefore whether the bond made a part of the plaintiff's complaint was executed for the benefit of materialmen who furnished material used in the performance of the building contract, or was for the exclusive benefit of the owner of the building.

It is virtually conceded by appellant that the bond here sued on is not a statutory bond, such as is authorized by §§ 6915 and 6916, C. & M. Digest, as it was not approved by the clerk of the circuit court of the county in which the building is situated, as is provided by § 6915, nor was it filed in the office of the clerk of the circuit court, as is required by § 6916. It is insisted, however, that, although the bond may not be a statutory bond, under which the surety would be liable to all materialmen and laborers, it is nevertheless a common-law bond, and made, not for the benefit of the owner alone, but for the benefit of laborers and materialmen as well, and the correctness of this contention is the question for decision.

The leading case on this subject in this State is that of *Eureka Stone Co.* v. *First Christian Church,* 86 Ark. 212, 110 S. W. 1042. This case was decided by a divided court, and was later to some extent distinguished in the case of *Morris* v. *Nowlin Lbr. Co.,* 100 Ark. 268, 140 S. W. 6, in which last-mentioned case two members of the court voted to expressly overrule the first-mentioned case. It was not overruled, and has since been followed, but it has always been recognized as a border-line case, the doctrine of which was not to be in any manner extended. The liability there sought to be enforced against the surety depended upon the construction of article fifteen of the bond, which read as follows: "That there shall be no liens filed on said building or work, either for labor done thereon or for materials furnished in its construction, and the contractor shall pay all artisans, materialmen and laborers doing work on or about said building or other work; and if, for any cause, such lien shall be filed by any person, then and in such case the contractor shall pay and satisfy the amount that may be due and owing," etc.

In the opinion construing this bond it was said that the intention of the parties in executing it was to be gathered from the whole instrument, and that, if it was intended to secure the payment of materials furnished to the contractor, the materialmen should recover on the bond as one executed for their benefit, but that, if the bond only secured the church—the owner—against claims and liens, then it became a bond of indemnity to the church, and the materialmen were not entitled to recover thereon. The materialmen sought to recover in that case upon the clause of the contract which provides that the contractor shall pay all the materialmen, but it was said, in answer to this contention, that the subject in contemplation of the parties was the protection of the church against liens that might be asserted against the building. This view was adopted because the majority were of the opinion that the language

immediately preceding, as well as that which follows, the portion of the bond quoted showed that the object in view was to protect the church from the filing of liens and to provide for their payment in case they were asserted.

Here, however, more comprehensive language was employed. The bond first provides that the principal—the construction company—"shall faithfully perform the contract on his part and satisfy all claims and demands incurred for the same, and shall fully indemnify and save harmless the owner from all cost and damage which he may suffer by reason of failure so to do, and shall fully reimburse and repay the owner all outlay and expense which the owner may incur in making good any such default."

If the bond contained only the provisions just stated, it could well be said, as was held in the Eureka Stone Company case, *supra*, that the bond was for the benefit of the owner only, and was intended to protect the owner against liens that might be asserted against the building by laborers and materialmen whose demands had not been discharged by the contractor. But the bond here sued on further provides that the construction company and its surety "shall pay all persons who have contracts directly with the principal for labor or materials."

If effect is given to the language last quoted as adding anything to the portion of the bond first quoted, it must be held that it was intended to impose the obligation, not only that the contractor should faithfully perform the contract on its part and satisfy all claims and demands incurred in its performance, and fully indemnify and save harmless the owner "from all cost and damage which he may suffer by reason of failure so to do, and shall fully reimburse and repay the owner all outlay and expense which the owner may incur in making good any such default," as is first provided, but shall, in addition, "pay all persons who have contracts

directly with the principal for labor or materials," as is further provided.

The improper use of pronouns appearing in the bond suggests the high degree of probability that the bond executed was such a blank form of bond as would have been used had §§ 6915 and 6916, C. & M. Digest, been complied with by having it approved by and filed with the clerk of the circuit court, and there would be no question about liability under the statutory bond, as the purpose of the statute is to give all laborers and materialmen a cause of action on the statutory bond, the proper execution of which operates to deprive them of a lien on the building which the statute gives where no statutory bond is executed. In other words, while the bond is not a statutory bond, in that it was not executed in the manner provided by the statute, its provisions and conditions are broad enough to cover the liability imposed by the statute had it been executed as the statute requires. We are of the opinion therefore that the bond was not executed for the sole benefit of the owner, but for the benefit of materialmen and laborers as well, and the demurrer to the complaint should not therefore have been sustained.

Opposing counsel have submitted briefs reviewing many cases from other jurisdictions in which sureties have been held liable under somewhat similar bonds for the satisfaction of the demands of materialmen and laborers, and other cases in which somewhat similar bonds were held to have been executed solely for the benefit of the owner. We do not review these cases, for to do so would require a discussion of the points of difference between the various bonds construed. Moreover, it is believed that the cases of *Eureka Stone Co.* v. *Church* and *Morris* v. *Nowlin Lbr. Co., supra,* and the subsequent cases which have followed them, fully announce the principles which must control here.

The judgment of the court below is therefore reversed, and the cause remanded with directions to overrule the demurrer.