(125 So. 55)

## FIDELITY & DEPOSIT CO. OF BALTIMORE, MD., v. RAINER. (3 Div. 876.)

Supreme Court of Alabama. March 21, 1929.

Rehearing Granted Dec. 5, 1929.

Ball & Ball, of Montgomery, for appellee. David J. Davis, of Birmingham, W. H. Mitchell, of Florence, and Tennis Tidwell, of Decatur, amici curiæ.

Rushton, Crenshaw & Rushton, of Montgomery, for appellant.

tioned that "if the principal shall faithfully perform the contract on his part and *satisfy all claims and demands incurred for the same*, and shall fully indemnify and save harmless the owner from all cost and damage which he may suffer by reason of failure, to do so and shall fully reimburse and repay the owner all outlay and expense which the owner may incur in making good any such default, and *shall pay all persons who have contracts directly with the principal for labor and material*, then this obligation shall be null and void," etc. The contract was for the building of a dwelling house and garage for the obligee of the bond. The agreed facts show that the beneficial plaintiff, by contract with Hanna, furnished him material used in constructing the building, for which it has not been paid. The circuit court rendered judgment for plaintiff, and defendant has taken this appeal.

It is apparent that there is here presented the question of whether a suit may be maintained for the use of a materialman, by virtue of the condition of the bond copied herein, when the contract was not a public one. When the contract is a public one, we have held that such a suit may be maintained. Union Indemnity Co. v. State, 217 Ala. 35, 114 So. 415; Union Indemnity Co. v. State (Ala. Sup.) 118 So. 148;[1] Jefferson County Board of Ed. v. Union Indemnity Co. (Ala. Sup.) 119 So. 837.[2] The basis of these cases is that it must be held that, in this respect, the bond was for the direct benefit of such materialman, when the contract was with a public corporation, and no lien or liability against the owner was created by law or contract, for that the bond could have no other meaning in that respect. There was nothing against which the obligee needed protection to that extent. It lost nothing if the contractor failed to pay, and gained nothing if he did. It could sustain no damage by such a breach of the condition of the bond. Such condition was in the bond, and could have but one purpose, and that was the direct benefit of such parties who came within its terms. This court pointed out that in so holding it was following the decisions of practically all the courts of the Union. The application of the rule was there expressly limited to "public contracts," and not those with private parties. We are here confronted with a contract of the latter class.

We recognize that it presents the anomalous position of construing the same provisions of a bond differently, when the obligees are different; in one instance it is a public corporation and in another it is a private person or corporation. The theory recognized in all authorities is that, for a suit to be maintained by or for the use of

FOSTER, J. This is an agreed case certified to this court by virtue of section 6095 of the Code. Appellant was the surety on a bond executed by one Hanna as principal payable to appellee Rainer, and condi-

[1] 218 Ala. 132.
[2] 218 Ala. 632.

such materialman, the bond must be construed as having been executed for his *direct benefit*, in that respect. We pointed to this general rule as the basis of construction in our cases mentioned above, citing the authorities. The only difference of opinion in any of the courts on that subject has been whether, and when, such materialman was so intended to be directly benefited. All the cases state that as the crucial point in determining the question. 1 Williston on Contracts, § 380; Simson v. Brown, 68 N. Y. 355, 361; Copeland v. Beard, 217 Ala. 216, 115 So. 389; Meyerson v. New Idea Hoisery Co., 217 Ala. 153, 115 So. 94, 55 A. L. R. 1231; Fite v. Pearson, 215 Ala. 521, 111 So. 15; Parker v. Jeffery, 26 Or. 186, 37 P. 712.

The following statement from Simson v. Brown, supra, is often quoted: "It is not every promise made by one to another, from the performance of which a benefit may ensue to a third, which gives a right of action to such third person, he being neither privy to the contract nor to the consideration. The contract must be made for his benefit as its object, and he must be the party intended to be benefited."

While we think the condition of the bond here in question was for the direct benefit of materialmen having no lien on public buildings, we also think, in agreement with many authorities, that the condition does not have such meaning when the materialman is furnished by law with a lien on the owner's property, who has a direct financial interest in protecting himself against such a lien. It will be observed that the bond does not in terms obligate the bondsmen to pay for such material, but only provides that, if such material is paid for, the bond shall be void, otherwise will remain in full force and effect. Its terms then do not import a direct benefit to the materialman. The difference in meaning of such a condition when used in bonds for building contracts for private parties and public organizations is thus smmarized from the cases and approved in 1 Williston on Contracts, § 372, p. 702:

"It is a common stipulation in a building contract that the contractor will pay all bills for labor and materials. In most cases the fufilment of this promise by the contractor operates to discharge a liability of the owner of the building, whose building would be liable to satisfy the liens given by the law to workmen and materialmen. *It cannot, therefore, be inferred that the promisee requires the promise in order to benefit such creditors of the contractor. The natural inference is that his object is to protect himself or his building.* When, however, the owner of the building is a municipality, or county, or state, such an inference cannot so readily be justified, for the laws give no liens against the buildings of such owners." (Italics supplied.)

A fair illustration of what the cases hold on that subject is a statement from the Supreme Court of Washington, wherein the court holds the condition has a different meaning under the different circumstances. We quote from Rust v. U. S. F. & G. Co., 87 Wash. 93, 151 P. 248, as follows:

"In Armour & Co. v. Western Const. Co., 36 Wash. 529, 78 P. 1106, we held that a surety company on a private bond was not liable to a materialman, as no privity existed between them; that is, the bond was not given for their benefit, and this is the general rule.

"But respondent argues that we held in effect in State, ex rel. Bartelt v. Liebes, 19 Wash. 589, 54 P. 26; Baum v. Whatcom County, 19 Wash. 626, 54 P. 29; McDonald v. Davey, 22 Wash. 366, 60 P. 1116, and Pacific Bridge Co. v. U. S. Fidelity, etc., Co., 33 Wash. 56, 73 P. 772, that contracts such as this are for the benefit of the creditors, and that they may sue on such a bond for their own benefit. All of these cases, except the McDonald case, involved public bonds, which are presumptively given for the benefit of the creditors, to take the place of a lien which does not lie against a municipality. While the court in the McDonald case apparently based the holding on the decisions on the same ground, there was sufficient in the case to show that the bond was intended to protect the creditors. Whether that case is in harmony with the rule stated or not, we regard the Armour case as controlling.

"There being no privity between the creditors and the appellant surety company, and the bond not being for their benefit, it follows that they received no rights under the contract or bond which respondent could enforce for their benefit."

The foregoing quotation was copied in a later case by the Washington Supreme Court in Du Pont, etc., v. Nat. Surety Co., 90 Wash. 227, 155 P. 1050. In that case the court again points out in great detail and with much elaboration the distinction between a "public" and "private" bond in this respect.

The Supreme Court of Oregon makes the distinction in Pankey v. Nat. Surety Co., 115 Or. 648, 239 P. 808. Likewise the following cases support this view: Indemnity Co. v. Am. University, 58 App. D. C. 184, 26 F.(2d) 556; Nat. Surety Co. v. Brown-Graves Co., 7 F.(2d) 91 (C. C. A. 6th Dist.); Maryland Cas. Co. v. Johnson, 15 F.(2d) 253 (U. S. Dist. of Mich.). Several cases in Texas take a decided position to the same effect after much consideration. Gen. Bonding Co. v. Waples Lbr. Co. (Tex. Civ. App.) 176 S. W. 651; Oak Cliff Lbr. Co. v. Am. Ind. Co. (Tex. Civ. App.) 266 S. W. 429; Murphy v. Huey & Philp Hardware Co. (Tex. Civ. App.) 267 S. W. 338.

The same is true in Missouri, Uhrich .v. Globe Surety Co., 191 Mo. App. 111, 166 S. W. 846; and in Pennsylvania, First Methodist Church v. Isenberg, 246 Pa. 221, 92 A. 141; and in Ohio. Cleveland Metal Roofing Co. v. Gaspard, 89 Ohio St. 185, 106 N. E. 9, L. R. A. 1915A, 768, Ann. Cas. 1916A, 745; in Kentucky, Dayton Lbr. Co. v. New Cap. Hotel, 222 Ky. 29, 299 S. W. 1063. In Kansas this rule is recognized, but the facts were different in Algonite Mfg. Co. v. Fid. & D. Co., 100 Kan. 28, 163 P. 1076, L. R. A. 1917D, 722, and in Minnesota, Jefferson v. Asch, 53 Minn. 446, 55 N. W. 604, 25 L. R. A. 257, 39 Am. St. Rep. 618. There is a complete annotation on this subject in 27 L. R. A. (N. S.) beginning on page 573.

On the other hand, in the following states a different view is taken: Arkansas (Mansfield Lbr. Co. v. Nat. Surety Co., 176 Ark. 1035, 5 S.W.[2d] 294); Georgia (American Surety Co. v. DeWald, 30 Ga. App. 606, 118 S. E. 703); North Carolina (Pittsburg Plate Glass Co. v. Fid. & Dep. Co., 193 N. C. 769, 138 S. E. 143); Wisconsin (Yawkey-etc., Lbr. Co. v. Sinaiko, 189 Wis. 298, 206 N. W. 976); Nebraska (Forburger Stone Co. v. Lion Bonding & Surety Co., 103 Neb. 202, 170 N. W. 897, 171 N. W. 288). This last case was based upon those relating to public contracts.

In Knight & Jillson v. Castle, 172 Ind. 97, 87 N. E. 976, 27 L. R. A. (N. S.) 573, the facts were that the promise to pay the materialmen was not a condition of the bond, but there was a distinct obligation to pay them. In Indiana, Ochs v. Carnahan, 42 Ind. App. 157, 76 N. E. 788, 80 N. E. 163, states that it is based upon the doctrine applicable to public contracts. It will be.observed that in each of the above cases the ruling results from a conclusion that the bond was for the benefit of the materialman as well as the owner.

We agree that the correct result follows from a proper determination of that question. It is a question of intention, to be derived from the language used, the situation of the parties, and legal principles which they are presumed to know and have in mind. When the contract is a public one, the parties all know that the materialman (and others similarly situated) are the only ones who can be benefited by the clause, either directly or indirectly, and therefore it must be intended of necessity to apply to them, if it has any meaning at all. When it is a private contract, they all know that the owner has sought to be and is thereby protected from liens and claims of materialmen and others, and therefore that he is the one directly and immediately intended to be protected, and that the protection to the materialmen and others is only incidental. The letter of the contract shows that it is to protect the owner only, and there is no principle of law pertaining to private contracts showing a different intent. It is here repeated that there is no promise or obligation of any kind expressly stated to pay the materialmen. Wherever there is such obligation expressed, a different result follows. Fite v. Pearson, supra.

Without prolonging the discussion, we observe that we have arrived at the conclusion that appellant was due the judgment in the circuit court. The case was tried without a jury on agreed facts.

Let the judgment be here entered reversing that of the circuit court, and in favor of the appellant.

Reversed and rendered.

ANDERSON, C. J., and GARDNER and BOULDIN, JJ., concur.

### On Rehearing.

BOULDIN, J. On further consideration, a majority of the court has reached the conclusion that the contractor's bond in this case means more than a mere indemnity to the owner as against claims for labor and material.

For ready reference we again set out the condition of the bond, numbering consecutively the conjunctive obligations therein, as follows:

"Now therefore the condition of this obligation is such that (1) if the principal shall faithfully perform the contract on his part, and (2) satisfy all claims and demands incurred for the same, and (3) shall fully indemnify and save harmless the owner from all cost and damage which he may suffer by reason of failure so to do, and (4) shall fully reimburse and repay the owner all outlay and expense which the owner may incur in making good such default, and (5) shall pay all persons who have contracts directly with the principal for labor and material, then this obligation shall be null and void; otherwise it shall remain in full force and effect."

Conditions or obligations Nos. 1, 2, 3, and 4, show careful wording to cover all the duties owed by the contractor to the owner. No. 1 in broad terms calls for faithful performance of the contract; No. 2, for payment of all claims and demands incurred in such performance; No. 3, indemnity to the owner against all damages he may suffer by reason of failure to *faithfully perform* or to pay all *claims and demands* incurred therein; No. 4, reimbursement of owner for outlays, including expenses, incurred by him in making good such default of the contractor.

It is difficult to frame more inclusive provisions protecting the owner, the promisee in the bond, against liens and demands for labor and material. Note this obligation

runs to him, the "owner," three times mentioned in these indemnity provisions. Then follows clause 5 respecting claims for labor and material. The "owner" is not named in this provision. The obligation runs to third persons. Its terms are: "Shall pay all persons" of the class named.

Claims for labor and material furnished a contractor may greatly exceed the amount for which liens may be enforced against the owner's building. In our state, as in many others, the lien usually extends to the unpaid balance due the contractor. If only indemnity to the owner is meant, must we not strike out "all persons" and substitute terms limiting the liability accordingly?

Again this clause covers only those having contracts for labor or material directly with the contractor. Liens may run in favor of those furnishing labor or material to a subcontractor. The surety stands for the contractor only under this feature of the bond. So, if indemnity to the owner is meant, the clause is inadequate for that purpose.

The claims for labor and material covered by the bond are not commensurate with indemnity to the owner. In one case they may exceed the liens chargeable on his property, exceed the indemnity due the owner, and in another the liens may exceed the claims for labor and material furnished directly to the contractor, those covered by the bond, and in such case the indemnity would be inadequate under this clause. Indemnity to the owner against claims for labor and material are fully covered by express provisions to that end; clause 5 is inapt and inadequate to the expression of such purpose. Unless inserted for the benefit of materialmen and laborers, it is meaningless.

In construing bonds for construction of public buildings and improvements, courts have generally held such conditions are intended for the benefit of materialmen and laborers because otherwise they are meaningless. The same reason logically applies to a bond in the form here presented.

We think no particular stress is to be given the fact that the obligation of the bond is expressed in the condition. This is mere matter of form, usual to bonds penal in form, but contractual in obligation. Here the obligations to the owner, as well as to materialman, are all expressed in the condition. If the contractor-principal shall perform these conditions, his obligations are met. If not, the bond stands breached. If he does not "pay all persons" their claims for labor and material furnished under direct contract with the contractor, says this bond, there is a breach thereof. If indemnity to the owner alone is in mind, he may have no claim, although such persons remain unpaid. The laborer or materialman may have failed to perfect his lien, or payment may have been made to the contractor before the fund was tied up by proper notice. We would then have a case wherein the bond is breached by its express terms, with no remedy thereon.

In dealing with contracts calling for the payment of money to a third person, it is generally declared that, in order for such third person to maintain an action thereon, the contract must be made for his benefit. Much confusion of opinion has arisen as to the meaning of "intended for his benefit."

If A and B enter into a contract wherein B, for a valuable consideration, agrees to pay money to C, the benefit to C is in getting his money. The motive of A in having the money paid over to C may have been no interest in C whatsoever, but wholly for A's own relief in paying his debt to C.

Thus, in the ordinary case of a sale of property, the purchaser agreeing to pay off an incumbrance as part of the purchase price, the motive of both vendor and purchaser may be solely for their own protection, the vendor to get his debt paid, and the vendee to free his property from incumbrance. Still, C in such case has an election to accept the promise made to A for his benefit, and sue thereon.

In the beginning A is the sole promisee. C is not a party thereto, and may look entirely to his existing security and remedies. So here, while the owner is the promisee named in the bond, the obligors promise him to pay all persons furnishing labor and material to the contractor. Such promise is supported by the consideration moving from the owner. Under our law and the prevailing law elsewhere, the person to whom the money is to be paid may maintain an action therefor. Fite v. Pearson, 215 Ala. 521, 111 So. 15; Farrell v. Anderson-Dulin-Varnell Co., 211 Ala. 238, 100 So. 205; Liles v. Cox, 215 Ala. 327, 110 So. 716; Copeland v. Beard, 217 Ala. 216, 115 So. 389.

It appears the bond before us is in the standard form adopted by the American Institute of Architects and approved by National Associations of contractors. Blake Architecture & Building (2d Ed.) p. 317.

As matter of common knowledge, the architect is a leading factor in the building industry, the maker of plans and specifications, the go-between of the owner and the contractor. He usually prescribes the form of contract, and the amount and condition of the bond, upon which bids are invited. We may assume that his primary concern in this regard is the protection of his client, the owner, This protection is best effected by such contract and guaranty bond as assures the construction of the building as agreed; such as not only indemnifies the owner, but tends to save him from harassing litigation, and to

prevent delays to the annoyance of both owner and architect.

[redacted] That the form of bond is prescribed by representatives of the building industry can, of course, in no way affect or modify the terms of the bond, or their legal effect; but in ascertaining the intent we think the general policy of promoting the industry and its orderly conduct by putting a bond behind the obligations of the contractor to all those concerned, the owner, the laborer, and materialman, may well be considered.

[redacted] Reduced to last analysis, the inquiry is this: Is the promise here merely to indemnify the owner, or to indemnify him and also to pay parties furnishing labor and material to the contractor?

We are not impressed with that line of judicial decision which assumes that the owner, the promisee, has no concern for those whose labor and material enter into his building, other than mere protection of himself by way of indemnity. He may provide for them a remedy on the bond, to prevent their proceeding against him under the lien laws. He may want the bond to protect them as an assurance that labor and material will be procured and the work done without delay and confusion. He may require it simply as a just protection to those whose labor and material enter into his building. As heretofore suggested, his motive is not important, but has a promise been required that they shall be paid, rather than a promise to protect the owner, if not paid?

We recognize the high authority of decisions relating to kindred bonds, some probably not distinguishable from this, which led to the conclusion expressed in our original opinion. Since then a well-considered case from the Supreme Court of Connecticut, Byram Lumber & Supply Co. v. Page, has been published, 109 Conn. 256, 146 A. 293. The illuminating article of Mr. Corbin on the subject, Yale Law Journal, November, 1928, p. 1, has been studied. * * *

Other cases dealing with the same form of bond care: Hartford Accident & Indemnity Co. v. W. & J. Knox Net & Twine Co., 150 Md. 40, 132 A. 261; Mansfield Lumber Co. v. National Surety Co., 176 Ark. 1035, 5 S.W.(2d) 294; Pittsburgh Plate Glass Co. v. Fidelity & Deposit Co., 193 N. C. 769, 138 S. E. 143; American Surety Co. v. De Wald, 30 Ga. App. 606, 118 S. E. 703.

True, as suggested, the Maryland and Arkansas decisions might have been placed on grounds stated in public building cases; but it is sufficient to say they were not so considered. The decisions are placed upon principles we have sought to state in this opinion.

It thus appears the decided weight of authority, recent authority, dealing with bonds of the form before us, support the view that the stipulation in favor of parties furnishing labor and material is for their benefit, and they may sue thereon. Perhaps the strongest argument against such view is that the penalty of the bond may thus be exhausted to the loss of the owner, the obligee, for whose primary protection the bond is given. His right to protection as the primary beneficiary, if such a situation should arise, is not here presented. A sufficient answer is that in the first instance the parties have presumably fixed an amount deemed sufficient to cover all the obligations named in the bond.

The obligation to pay "all persons" furnishing labor and material under direct contract with the principal is an express stipulation of the bond. We think, on principle and authority, it should be given effect according to its terms.

Application for rehearing granted; judgment of reversal set aside, and cause affirmed.

SAYRE, THOMAS, and BROWN, JJ., concur in the foregoing opinion.

ANDERSON, C. J., and GARDNER and FOSTER, JJ., dissent.