[File No. 5973.]

HOLLERMAN MFG. CO., INC., a Corporation, Appellant, v. STANDARD ACCIDENT INSURANCE COMPANY, a Corporation of Detroit, Michigan, Respondent.

(239 N. W. 741.)

Opinion filed December 19, 1931.

*Arthur B. Atkins* and *Coventry & Thompson,* for appellant.

*Dullam & Young* and *Guesmer, Carson & McGregor,* for respondent.

*Carr & Rittgers* and *Clapp, Elmquist, Briggs, Gilbert & McCartney,* amici curiæ.

Burke, J. This is an action upon a builders contract and bond to recover for material furnished by the plaintiff to the contractor. The only question involved is whether the bond secured the payment of the material so furnished to the contractor by the plaintiff. The contract is as follows, to-wit:

". . . Article No. 1. The Contractor agrees to provide all the materials and to perform all the work shown on the drawings and described in the specifications entitled 'General Construction, of a Church Building for the Church of St. Mary, Hague, North Dakota,' prepared by Charles A. Hausler, Architect & Engineer, St. Paul, Minnesota, acting as, and in these contract documents entitled the Architect & Engineer, Harry Firminger Associate, and to do everything required by the Contract, the Specifications, and the Drawings, which Specifications and Drawings are hereby amended as follows: Accepting Alternates No. Three (3), Four (4), Five (5), Six (6), Nine (9) and Thirteen (13) in accordance with the proposal submitted by the Contractor, dated May 8th, 1929, a copy of which proposal is hereto attached and provided further that the Owner reserves the right to accept or reject any additional alternates in accordance with the proposal hereto attached providing he notifies the Contractor of such acceptance or rejection within Thirty (30) days of date of this contract.

"Article No. 2. The owner agrees to pay the Contractor in current funds for the performance of the Contract, Fifty Three Thousand, Six Hundred Seventy Dollars ($53,670.00), subject to additions or deductions as provided in said specification and to make payments on account thereof as provided by and in accordance with requirement of the said specification.

". . . Article No. 4. The Contractor and the Owner agree that the General Conditions of the Contract, the Specifications and the Drawings together with this agreement, form the Contract, and that they are as fully a part of the same, as if hereto attached or herein re-

peated; and that the following is an exact enumeration of the specifications and drawings: Specifications—Pages 1 to 34 inclusive. Drawings—Sheets No. 1 to 17 inclusive.

"Article No. 5. It is further understood and agreed that the Contractor shall execute and deliver to the Owners a good and sufficient surety bond equal in amount to the amount of the contract, and extending for a period of two (2) years from execution thereof and conditioned for the faithful performance of said contract; and that the Contractor shall satisfy all claims and demands, incurred for the same, and shall fully indemnify and save harmless the Owners from all cost and damage which he may suffer by reason of failure so to do, and in making good any such default, and shall pay all persons who have contracts directly with the principal for labor or materials, then this obligation shall be null and void; otherwise it shall remain in full force and effect. . . ."

By Article 4 of the contract it is specifically provided that the specifications and drawings, together with said agreement, is made the contract as fully as if attached thereto or repeated in the said agreement.

On page 3 of the specifications there is a paragraph providing that "the successful bidder will be required to enter into a written contract with the Owners for doing the work or furnishing the materials aforesaid within ten (10) days after notice by the Owners has been given that the contract is ready for execution. The successful bidder shall be required within the ten (10) days aforesaid to furnish a surety company bond for the full amount of the contract price, conditioned for the faithful performance of the contract and for payment for all labor and material used in connection therewith and such other conditions as may be required by law. Bond to remain in force for a period of two (2) years from date of contract."

On page 14 of the specifications there is a paragraph providing that "the contractor is to pay for all water used in the entire work covered by these specifications."

And again on the same page, "The cement used throughout the construction of all work herein specified unless otherwise expressly stated, shall be one brand, and brand must be approved by the Architect and

Engineer. Architect and Engineer will designate testing laboratory to make test, and contractor shall pay for same."

The material part of the bond executed by the contractor reads as follows:

"Whereas, the above bounden Principal has entered into a certain written contract with the above named Obligee, dated the 20th day of May, 1929 to furnish all materials and perform all work in connection with construction of a Church Building for the Church of St. Mary, Hague, North Dakota which contract is hereby referred to and made a part hereof as fully and to the same extent as if copied at length herein.

"Now, therefore, the condition of the above obligation is such, That if the above bounden Principal shall well and truly keep, do and perform, each and every, all and singular, the matters and things in said contract set forth and specified to be by the said Principal kept, done and performed at the time and in the manner in said contract specified, and shall pay over, make good and reimburse to the above named Obligee, all loss and damage which said Obligee may sustain by reason of failure or default on the part of said Principal, then this obligation shall be void; otherwise, to be and remain in full force and effect."

It is the contention of the appellant that the specifications are made a part of the contract and that in determining the liability upon the bond the specifications, the contract and the bond must all be construed together as one instrument and that the specifications and the contract are as much a part of the bond and to the same extent as if copied at length in said bond. On the other hand, the respondent contends that the bond is an indemnity to the obligee alone and does not cover labor and material furnished to the contractor, and that while the contractor did agree to give bond for the satisfaction of all claims and demands incurred, the bond was not in accordance with said contract; that the obligee could have insisted upon the kind of a bond mentioned in the contract, but that since he did not it was waived.

Respondent relies upon the following cases: Builders Material & Supply Co. v. J. B. Evans Constr. Co. 204 Mo. App. 76, 221 S. W. 142. The conditions in the bond in this case, upon which the respondent relies, are set out by the court in italics, as follows:

"*Now, therefore, the condition of this obligation is such, that if the principal shall indemnify the obligee against any loss or damage di-*

*rectly arising by reason of the failure of the principal to faithfully perform said contract, then the obligation shall be void, . . ."* and the court held that this was simply an agreement to indemnify the obligee and no one else. It does not make the performance of the contract an obligation of the bond. The only obligation is to make good any loss which the obligee must suffer.

Electric Appliance Co. v. United States Fidelity & G. Co. 110 Wis. 434, 53 L.R.A. 609, 85 N. W. 648. In this case the bond did not make the contract a part of the bond. The court said: "By reference to the contract, it will be seen that the contractors bound themselves to furnish a bond, not only for the faithful performance of the contract, but for the payment of all claims for labor and materials. The bond accepted by the city omitted this latter provision, and was conditioned only for the performance of the contract. The contract was apparently drawn upon the theory that the city might be liable for the claims of laborers and materialmen. Such, however, is not the fact."

Babcock v. American Surety Co. 149 C. C. A. 472, 236 Fed. 340. In this case the court said specifically: "The bond itself did not provide for the payment of materialmen, nor did the contract contain any such provision."

This decision was based upon the failure to give a builders bond for the building of a government building under the Federal Statutes.

United States use of Stallings v. Starr (C. C. A. 4th) 20 F. (2d) 803. In this case neither bond nor contract contained an obligation to pay for labor or material and the same is true of United States use of W. B. Young Supply Co. v. Stewart (C. C. A. 8th) 288 Fed. 187.

It is well settled that if the contract provides for the payment of labor and material, an action will lie for such on the contractors bond to secure the performance of the contract and the bond becomes a part of the contract when it is made a part thereof. Peake v. United States, 16 App. D. C. 415.

A similar case is the case of Orinoco Supply Co. v. Shaw Bros. Lumber Co. (Orinoco Supply Co. v. Illinois Surety Co.) 160 N. C. 428, 42 L.R.A.(N.S.) 707, 76 S. E. 273. See also Cooke v. Luscombe, 132 Kan. 147, 294 Pac. 849; Pacific States Electric Co. v. United States Fidelity & G. Co. 109 Cal. App. 691, 293 Pac. 813; Hartford Acci. & Indem. Co. v. W. & J. Knox Net & Twine Co. 150 Md. 40, 132 Atl.

261; Baltimore use of Warren Webster & Co. v. Maryland Casualty Co. 146 Md. 512, 126 Atl. 881; Doyle v. Faust, 187 Mich. 108, 153 N. W. 728; Royal Indem. Co. v. Northern Ohio Granite & Stone Co. 100 Ohio St. 373, 12 A.L.R. 378, 126 N. E. 405; Knight & J. Co. v. Castle, 172 Ind. 97, 87 N. E. 976, 27 L.R.A.(N.S.) 573, and note; Forberger Stone Co. v. Lion Bonding & Surety Co. 103 Neb. 202, 170 N. W. 897, 171 N. W. 288; Hartford Acci. & Indem. Co. v. Board of Education (C. C. A. 4th) 15 F. (2d) 317; Maryland Casualty Co. v. Fowler (C. C. A. 4th) 63 A.L.R. 1375, 31 F. (2d) 881; Ideal Brick Co. v. Gentry, 191 N. C. 636, 132 S. E. 800; Callan v. Empire State Surety Co. 20 Cal. App. 483, 129 Pac. 978, 981; W. P. Fuller & Co. v. Alturas School Dist. 28 Cal. App. 609, 153 Pac. 743; Fickling v. Jackman, 203 Cal. 657, 662, 265 Pac. 810; Ryan v. Shannahan, 209 Cal. 98, 285 Pac. 1045, 1047.

In the case of Pacific States Electric Co. v. United States Fidelity & G. Co. 109 Cal. App. 691, 293 Pac. 812, the California court said: "It is also elementary that a bond given to guarantee the execution of a contract according to its terms becomes a part of such contract, and to that contract the sureties become parties the same as though they had actually made and executed the contract itself. Therefore, in interpreting the language of the undertaking for the purpose of gathering its scope or the measure of the liability of the sureties, we must do so by treating or viewing the contract and the undertaking as a whole or as constituting an indivisible contract." To the same effect is Jordan v. Kavanagh, 63 Iowa, 152, 18 N. W. 851.

Respondent admits that the contract provides for the execution of a bond to secure the payment of all claims for labor and material, but claims that no such provision is in the bond and therefore such provision in the contract is waived. There is no merit in this contention; for how can any portion of the contract be waived when the entire contract is incorporated in and made as much a part of the bond *as fully and to the same extent as if copied at length therein?* The principal and surety would not have made the contract a part of the bond except for the purpose of making the bond effective as contemplated by the contract. It is clear from the contract which includes the specifications that the contractor was to secure the payment of all claims for labor and material. The specifications so provide and they further

provide that the contractor must pay for all water used and the cost of making laboratory tests of the cement used in the building. Nothing was overlooked in the specifications that would protect the owner, materialmen and laborers and when the contractor's proposal was accepted and the specifications were incorporated in the contract he was bound thereby. In article 5 of the contract, he agrees to deliver to the owner a good and sufficient surety bond, and then he states: "and conditioned for the faithful performance of said contract; and that the contractor shall satisfy all claims and demands incurred for the same, and shall fully indemnify and save harmless the owners from all cost and damages which he may suffer by reason of failure so to do, and in making any such default, *and shall pay all persons who have contracts directly with the principal for labor or materials, then this obligation shall be* null and void; *otherwise it shall remain in full force and effect.*" (The italics are ours.) This article in the contract states specifically what the obligations of the bond shall be and one is (there are others) the contractors shall pay all persons who have contracts directly with the principal for labor or materials, and if he does this (and performs all the other obligations of the bond) "then this obligation shall be null and void." What obligation shall be null and void? The obligation of the contractor under his contract as defined in article 5 of the contract which became the obligation of the bond when made a part thereof.

In the case of Southwestern Portland Cement Co. v. Williams, a recent case from New Mexico, 32 N. M. 68, 49 A.L.R. 525, 251 Pac. 380, the specifications were made a part of the contract. The court said:

"It seems plain that one of the obligations assumed by the contractor was to pay all just claims for labor, material and supplies, and that the bond was conditioned upon his doing so. Some point is made that there is no express 'promise' to make such payments, either in the contract or in the bond. It is true that the matter is not expressed in that language. The purpose of a contract is to define the rights and obligations of the parties. It cannot be material whether the draftsman or the parties choose the form of expression, 'the party of the second part promises' to do so and so, or the expression that he 'is obligated' to do so and so. The signing of the contract admitted the

obligation. The clause in question is not a mere recital of an obligation existing outside the contract. It created the obligation. The bond follows the form of expression used in the contract. It is to remain in full force and effect until the 'obligations' of the contract shall have been well and truly performed. One of those 'obligations' is to pay all just claims for labor, material, and supplies. The obligation of the contract and condition of the bond has not been performed. So, under the terms of the bond, the surety's liability has not been discharged."

In the case of North Bergen Bd. of Edu. v. Jaeger, 67 N. J. L. 39, 50 Atl. 583, the court said:

"Upon the case before us it is clear that Jaeger entered into some contract with respect to every portion of the specifications. Hence, under the clause headed 'Guaranty,' he either guarantied the results therein stated, or he contracted so to guaranty. For the purposes of the present action no distinction can be drawn. Where there is no statutory objection, and no controlling indication that a separate and more formal contract was mutually contemplated by the parties, an agreement to do a certain thing and an agreement to agree to do it are legally identical."

Under the contract the contractor was obligated to pay all persons contracting directly with the principal for labor or materials and his contract became the contract of the surety company when it was incorporated in the surety company's bond. Under the rules of interpretation, the bond, contract and specifications must be construed together to give effect to the mutual intention of the parties as it existed at the time of contracting so far as the same is ascertainable and lawful, and so as to give effect to every part if reasonably practicable, each clause helping to interpret the others, and when so considered, it is clear that when the parties united the specifications and the contract into the bond, making the obligation of the contract the obligation of the bond, that they intended the bond as security for the payment of labor and material in case the principal made default in payment thereof. It is admitted that the plaintiff contracted with and sold to the contractor material of the value of $1,745.52; that the principal is in default in failing to pay for such material, and the amount claimed is due and owing to plaintiff on the bond.

The judgment of the district court is reversed and judgment is or-

dered for the plaintiff in the sum of $1,745.52, with interest thereon from and since the first day of January, 1930, at the rate of six per cent (6%) and costs and disbursements.

CHRISTIANSON, Ch. J., and BIRDZELL, NUESSLE and BURR, JJ. concur.