**MERCANTILE NATIONAL BANK AT DALLAS et al., Appellants,**

**v.**

**ELECTRICAL SUPPLY CORPORATION et al., Appellees.**

**No. 17111.**

Court of Civil Appeals of Texas.

Dallas.

Nov. 15, 1968.

Rehearing Denied Dec. 6, 1968.

Lloyd E. Elliott, of Brundidge, Fountain, Elliott & Churchill, Dallas, G. W. Parker, Jr., of Stone, Tilley, Snakard, Law & Brown, Ft. Worth, for appellants.

Arthur G. Schroeder, Jr., of Matthews & Matthews, Dallas, for appellees.

BATEMAN, Justice.

Our former opinion is withdrawn and the following substituted therefor:

The appellee Electrical Supply Corporation sued the appellant Mercantile National Bank at Dallas, herein called Mercantile, alleging breach of its depository contract in debiting to appellee's account a check for $21,124.21 on which the endorsement of the payee, Lithonia Lighting Products Company of Conyers, Georgia, herein called Lithonia, was forged. Mercantile entered a general denial and specially denied that the endorsement was a forgery. It impleaded the Fort Worth National Bank, herein called Fort Worth Bank, alleging that it was liable to Mercantile upon

its subsequent endorsement which guaranteed all prior endorsements. All parties moved for summary judgment. The trial court sustained appellee's motion and rendered summary judgment for it against Mercantile and for Mercantile over against the Fort Worth Bank.

Both banks appeal on points complaining that the trial court erred in holding that the check was not payable to bearer, in sustaining appellee's motion for summary judgment, and in denying the motions of appellants as to appellee's claim. The facts, appearing from depositions and affidavits, are undisputed.

Appellee, being engaged in the wholesale electric supply business in Dallas, regularly purchased lighting fixtures from Lithonia. Invoices from Lithonia were checked by appellee's cost clerk and, if found correct, were then sent to appellee's bookkeeping department for accumulation and for payment.

In March and April 1966 one John Alger was employed by appellee as accounts payable bookkeeper. Among Alger's duties was the preparation of checks for payment of the accumulated invoices, which he did on his own initiative. All checks had to be signed by any two of four officers of appellee. When Alger prepared a check or group of checks, he would take them to one Herman Butcher, appellee's vice-president, for the first signature. Butcher would check the invoices accompanying the checks and sign the latter, then take the checks to one of the other three officers for countersignature, after which they would be returned to Alger, who mailed them to the payees in window-type envelopes. Therefore, each check had to have on its face the address of the payee. The check in question was dated April 10, 1966 and was signed by Butcher and one of the other officers. When it was presented to Butcher for signature no address appeared under the name of the payee, but when it came to Mercantile for payment it had the address "304 Sinclair Bldg., Fort Worth, Texas" typewritten under Lithonia's name as payee. Butcher testified by deposition that the check did not have that address on it when he signed it, that he would not have signed it if such address had been on it, for he knew that was not Lithonia's address; and that, although he could not be sure it was this same check, there was a check in the batch presented to him for signature by Alger that day which did not have the payee's address on it and that when the checks were signed by both of the officers and returned to Alger he instructed Alger to put the proper address on the check before mailing it.

Lithonia's home office was at Conyers, Georgia, and it had never had an address at 304 Sinclair Building, or elsewhere in Fort Worth, nor did it have an account at the Fort Worth Bank. The stamped endorsement on the check was:

"FOR DEPOSIT ONLY IN THE FORT WORTH NATIONAL BANK LITHONIA LIGHTING PRODUCTS COMPANY."

This was not on the format used by Lithonia. The check was endorsed by the Fort Worth Bank on April 11, 1966 and was received by Mercantile on April 12, 1966, was paid and charged to the account of appellee. On April 14, 1966 Alger left appellee's employment without notice. Butcher testified that the next morning some man called over telephone and told him that Alger had had to fly to California because his wife had been in an accident. His "employment file" containing his application for employment could not be found after Alger left. Alger did not return and has not been heard from since then. No one authorized by Lithonia had placed its endorsement on the back of the check, and Lithonia did not receive the proceeds or any part thereof.

The disposition of this case is governed by the terms of the Negotiable Instruments Act, Vernon's Ann.Civ.St., Articles 5932–

5948, the events in question having occurred prior to the effective date of the Business and Commerce Code.

■ Appellee contends that the endorsement on the check in question was forged in that it was "made without the authority of the person whose signature it purports to be," within the meaning of Section 23 of Art. 5932, V.A.C.S., and that Mercantile therefore could not lawfully pay the check and charge it to appellee's account. Appellants concede that this is the general rule, but contend that the rule is inapplicable here because the check was legally payable to bearer and that no endorsement thereof was necessary, relying on the provisions of Subdivision 3 of Section 9, of Art. 5932, V.A.C.S.

Prior to 1961 Subdivision 3, Section 9, Art. 5932, V.A.C.S., merely provided that an instrument is payable to bearer "when it is payable to the order of a fictitious or nonexisting person, and such fact was known to the person making it so payable." In Liberty Mutual Ins. Co. v. First National Bank in Dallas, 151 Tex. 12, 245 S.W.2d 237 (1951), the insurance company had a claims manager and adjuster named Hill, who had checks prepared and signed payable to fictitious claimants, some nonexistent and some existent but to whom Liberty Mutual was not indebted, in settlement of fake claims, which checks were endorsed by Hill with the names of the fictitious payees and cashed. The drawee bank claimed that the checks were payable to bearer because Hill, the person who had prepared the checks, knew that they were payable to fictitious or nonexisting persons, but the Supreme Court held that it was not the knowledge of the employee who prepared the checks, but that of the employee who actually signed the checks, which governed.

In 1961 Subdivision 3 of Section 9, Art. 5932, V.A.C.S., was amended to read:

"Sec. 9. The instrument is payable to bearer:

&ast; &ast; &ast; &ast; &ast; &ast;

"3. When it is payable to the order of a fictitious or nonexisting person or to a living person not intended to have any interest in it and such fact was known to the drawer or was known to his employee or other agent who supplies or causes to be inserted the name of such payee; or &ast; &ast; &ast;."

It is said that this amendment is "designed to protect banks in typical 'padded payroll' situations and other cases where a dishonest employee furnishes a drawer's signing officer with the name of a payee who is to have no interest in the check; it places the responsibility upon the drawer for losses resulting from dishonest acts of his agents." Michie on Banks and Banking (Perm.Ed.), Cumulative Supp. to Vol. 5B, pp. 88–89. Appellants argue that the facts show that Alger, who prepared the check, did not intend for Lithonia to have any interest in it, and the check therefore was payable to bearer and needed no endorsement.

■ Appellee's first counterpoint is that Mercantile's defense, being in avoidance of the liability which would otherwise result from its cashing the check on a forged endorsement, not having been pled as required by Rule 94, Vernon's Texas Rules of Civil Procedure, was waived. We agree with appellee. Mercantile's answer consisted only of a general denial and a special denial of the forgery of the endorsement. Neither the answer nor Mercantile's motion for summary judgment gave any inkling of what its position would be if the forgery were established. No notice was given to appellee that Mercantile would assert the right, under its general denial, to contend that even if the forgery were proved it would be of no consequence because the check was legally a bearer instrument negotiable by delivery alone. We do not think it had that right. The case falls squarely within the language of the Supreme Court, speaking through Chief Justice Willie, in Smothers v. Field, Thayer & Co., 65 Tex. 435 (1886), paraphrased as text in 45 Tex.Jur.2d, Pleading, § 62, p.

478, and quoted with approval in W. L. Moody & Co. v. Rowland, 100 Tex. 363, 99 S.W. 1112, 1116 (1907), as follows:

"As the plaintiff is not bound to allege any more than he must prove, it is sufficient that he sets forth in his petition a state of facts, such as, if established, will shift the burden of the proof upon the defendant in the motion. The defendant must prepare his pleadings to correspond with the character of proof to be used by him, to meet the prima facie case of the plaintiff. If he proposes to disprove the facts alleged by the plaintiff, a general denial will serve his purpose. But, if the facts alleged are true, and he wishes to explain or avoid them, he must aver, specially, the matters of avoidance or explanation upon which he relies. These are well-settled rules under our system of pleading, applicable to this class of cases as well as any other."

We hold, therefore, that by its failure to plead the defense Mercantile waived the same.

■ The proof showed without dispute that the check in question, having been signed by appellee's officers with every intention that it be sent to Lithonia in payment of appellee's indebtedness to Lithonia, was presented to Mercantile, the drawee bank, with Lithonia's name stamped on the back by someone having no authority to do so, and that Lithonia never received the proceeds of the check or any part thereof. This, in our opinion made the check "wholly inoperative" within the meaning of Section 23 of Art. 5932, V.A.C.S., from which it follows that Mercantile was unauthorized to charge the check to appellee's account. First State Bank of Wichita Falls v. Oak Cliff Savings & Loan Ass'n, 387 S.W.2d 369 (Tex.1965); 8 Tex.Jur.2d, Banks, § 268, p. 451.

For the reasons given above, we overrule all of Mercantile's points of error and the Fort Worth Bank's point of error, and affirm the judgment.

Affirmed.