**PARLIAMENT INSURANCE COMPANY, Appellant,**

**v.**

**The L. B. FOSTER COMPANY et al., Appellees.**

**No. 1042.**

Court of Civil Appeals of Texas, Corpus Christi.

Dec. 31, 1975.

Rehearing Denied Jan. 30, 1976.

Dale French, Dameris & French, Houston, for appellant.

Arthur P. Terrell, Butler, Binion, Rice, Cook & Knapp, Houston, for appellees.

## OPINION

NYE, Chief Justice.

This is a suit brought by two materialmen, L. B. Foster Company and Howard Smith Company against Parliament Insurance Company to recover upon a subcontractor's performance-payment bond which was executed in favor of the original contractor. Plaintiff L. B. Foster and plaintiff Howard Smith Company sought recovery for materials sold and delivered to the subcontractor. Trial was before a jury which answered submitted special issues. The jury found favorably toward plaintiffs with the trial court entering judgment that plaintiff Foster recover the sum of $15,304.67 and that plaintiff Smith recover the sum of $14,300.83. The defendant Parliament Insurance Company, who had issued the performance-payment bond, has duly perfected its appeal to this Court.

The facts of this case with several exceptions are undisputed. Certain trial stipulations were entered into by the parties prior to trial. From the record and stipulations, it appears that George C. Cox, Inc. was the prime contractor on two separate projects with a Utility District and with a Water Control Improvement District. Cox had entered into separate contractual agreements with these two governmental entities which are located in Harris County. John Dickson, d/b/a Dickson Drilling Company, was a subcontractor on each of the public work projects of C.N.P. Utility District and W.C. I.D. 109. The subcontractor's job entailed drilling and equipping a water well on each of these projects. As a requirement of its subcontract with Cox, Dickson Drilling Company was required to furnish separate performance and payment bonds, "guaranteeing payment to all persons supplying labor and materials or furnishing him any equipment in the execution."

The defendant Parliament Insurance Company as surety executed two Performance-Payment Contractor's Bonds. One in the amount of $47,107.00 and the other in the amount of $55,017.00. In each, Dickson was the principal and George C. Cox, Inc. was the obligee. The record discloses that both plaintiffs had prior business dealings with subcontractor Dickson and had extended him an open line of credit. Prior to the commencement of the subject projects, Dickson had certain amounts then outstanding and due to the plaintiffs.

It was undisputed that sometime between April 14 and June 14, 1972, the plaintiff L.

B. Foster Company sold to Dickson Drilling Company certain pipe having the fair market value of $7,107.43 for use on the public work, C.N.P. Utility District; that on or about April 25, 1972, the plaintiff Howard Smith Company sold to Dickson some stainless steel screen and other equipment for use on the said public work in C.N.P. Utility District having a fair market value of $6,223.91; and that on or about July 3, 1972, the plaintiff Foster sold to Dickson other materials and supplies for use on the public work of W.C.I.D. 109 having the fair market value of $8,137.63, plus freight charges in the amount of $59.61; and that later plaintiff Smith sold to Dickson materials and supplies for use on the public work in W.C.I.D. 109 having the fair market value of $8,076.92. It is further undisputed that all of the above supplies referred to were used and utilized in and for C.N.P. Utility District and W.C.I.D. 109, Harris County, Texas, and that prior to being supplied such materials, Dickson agreed to the prices stated above. Plaintiffs allege that they received no payment for the above materials from Dickson Drilling Company.

Dickson Drilling Company was adjudicated a bankrupt in the United States District Court for the Southern District of Texas. Thereafter, plaintiffs L. B. Foster Company and Howard Smith Company brought suit against Parliament Insurance Company for the sums set out above under the payment and performance bonds executed by defendant. The defendant answered asserting in effect two defenses: 1) that these performance-payment contractor's bonds did not inure to the benefit of the materialmen; and 2) that in any event payment was made, but that such payments were applied by the plaintiffs to past debts leaving the amounts due on the present projects unpaid.

The trial was before a jury and the case submitted on special issues. The jury found that: 1) no payment was made to Foster by Dickson from the proceeds earned from C.N.P. Utility District and/or W.C.I.D. 109 wherein an officer, employee, or agent of Foster knew of the source of those payments, and 2) no payment was made to Smith by Dickson from the proceeds earned from C.N.P. Utility District and/or W.C. I.D. 109 wherein an officer, employee, or agent of Smith knew the source of those payments. Based on the answered issues, the trial court entered judgment accordingly.

The defendant Parliament Insurance Company brings forward twenty-two points of error. These points, however, can be conveniently grouped into three areas. The defendant's first six points of error complain of the performance-payment contractor's bonds sued on, contending that under the wording of these bonds, said bonds were, as a matter of law, indemnity bonds only and did not inure to the benefit of either plaintiff.

The contract between George C. Cox, Inc. and Dickson Drilling Company obligated Dickson to execute separate performance and payment bonds, each in the sum of one hundred percent (100%) of the total contract price in standard forms for this purpose, guaranteeing faithful performance of the work and the fulfillment of any guarantees required, and further guaranteeing payment to all persons supplying labor and materials or furnishing him any equipment in the execution of the contract.

The subject bonds were furnished by Dickson as principal in each bond and the obligee being George C. Cox, Inc. Both bonds in question were identical except for the date of execution and the project which they were to cover. They were designated "PERFORMANCE–PAYMENT CONTRACTOR'S BOND". The questioned provision contained in each bond reads as follows:

"Now, Therefore, the condition of the obligation is such that, if the Principal shall faithfully perform the contract on his part, and shall fully indemnify and save harmless the Obligee from all cost and damage which the Obligee may suffer by reason of failure so to do and shall fully reimburse and repay the Obligee all

outlay and expense which the Obligee may incur in making good any such default, *and shall pay all persons who have contracts directly with the Principal for labor or materials,* then this obligation shall be null and void, otherwise it shall remain in full force and effect." (Emphasis added.)

The bond now under consideration was to become void upon the doing of the following things by Dickson: first, that he shall faithfully perform the contract on his part; second, that he shall fully indemnify and save harmless the obligee (Cox) from all cost and damage which the obligee may suffer by reason of failure so to do; third, that he shall fully reimburse and repay the obligee all outlay and expense which the obligee may incur in making good any such default; and fourth, that he shall pay all persons who have contracts directly with the principal for labor or materials. If the only purpose in the insertion of the fourth obligation was to protect the obligee, Cox, then under present Texas law the plaintiff cannot recover. See *Metropolitan Casualty Ins. Co. v. Texas Sand & Gravel Co.,* 68 S.W.2d 551 (Tex.Civ.App.—Waco 1934, writ dism'd); *Employers Liability Assur. Corporation v. Trane Co.,* 139 Tex. 388, 163 S.W.2d 398 (1942, opinion adopted). However, if such provisions were incorporated for the benefit of materialmen and laborers, then they (materialmen and laborers) may invoke such provisions for their protection. *Wm. Cameron & Co. v. American Surety Co. of New York,* 55 S.W.2d 1032 (Tex. Comm'n App.1932, judgment adopted); *Mosher Mfg. Co. v. Equitable Surety Co.,* 229 S.W. 318 (Tex.Comm'n App.1921, judgment adopted). The effect that is to be given to such a clause depends on the intention of the parties. In ascertaining such intent, considerable weight is given to the question of whether or not such clause ("and shall pay all persons who have contracts directly with principal for labor or materials") was or was not necessary for the protection of the obligee in the bond. If the intent of such provision was neces-

sary for the complete protection of the named obligee (in this case Cox, Inc.), then the bond is generally construed as an indemnity bond which would inure for his protection only. In other words, if the provision (number four) is not necessary for the protection of the obligee, then it must have been inserted into the bond for some purpose. The courts then construe such provision as inuring to the benefit of the laborers and materialmen. See *Metropolitan Casualty Ins. Co. v. Texas Sand & Gravel Co.,* supra; *Mosher Mfg. Co. v. Equitable Surety Co.,* supra; *American Employers' Ins. Co. v. Roddy,* 51 S.W.2d 280 (Tex. Comm'n App.1932, holding approved); *Wm. Cameron & Co. v. American Surety Co. of New York,* supra; *Bill Curphy Co. v. Elliott,* 207 F.2d 103 (C.C.A. 5th Cir. 1953); *American Surety Co. of New York v. Shaw,* 69 S.W.2d 47 (Tex.Comm'n App.1934, holding approved).

The question presented for decision is, therefore, whether the language of the defeasance clause of the subject bond (as set out above) is such as would give a direct right of action to the materialmen against the surety (defendant) on the subcontractor's bond, or whether such provision was for the exclusive benefit of Cox, the contractor. The plaintiffs herein contend that the subject bond in question combined in the one bond their requirement to furnish both a performance and payment bond. Such contention is bolstered by the fact that only one bond was issued for each job and further on the fact that the bond that was issued stated in bold type at the top of the bond the words, "Performance-Payment Contractor's Bond". Dickson was required by his contract with Cox to furnish both a performance and payment bond. The defendant surety company contends that the subject clause was for the protection of the obligee and, therefore, the defendant surety company is not liable to the plaintiff materialmen.

Ordinarily a performance bond protects the principal for the full performance

of the contract. The payment bond is generally for the sole benefit of laborers and materialmen to guarantee payments for work, labor and materials that were furnished and that went into the job. Article 5160, subd. A(b) which requires performance and payment bonds from the prime contractor on public work, provides:

"(b) A Payment Bond, in the amount of the contract, solely for the protection of all claimants supplying labor and materials as hereinafter defined, in the prosecution of the work provided for in said contract, for the use of each such claimant."

However, the obligations of the surety arise out of and are imposed by the bond and are measured and determined by its terms. *Employers' Liability Assur. Corporation v. Trane Co.,* supra; *Metropolitan Casualty Ins. Co. v. Texas Sand & Gravel Co.,* supra.

In a case of striking similarity, *Wm. Cameron & Co. v. American Surety Co. of New York,* supra, upon which the plaintiffs rely primarily, a materialman brought suit to recover upon a surety bond given in connection with a contract for the construction of a warehouse between the owner and general contractor. The bond executed by the defendant had a provision containing almost identical language as that contained in the bond in question. The bond in that case reads in part as follows:

"Now therefore, the Condition of this Obligation is such that if the Principal shall faithfully perform the Contract on his part, and satisfy all claims and demands, incurred for the same, and shall fully indemnify and save harmless the Owner from all cost and damage which he may suffer by reason of failure so to do, and shall fully reimburse and repay the Owner all outlay and expense which the Owner may incur in making good any such default, *and shall pay all persons who have contracts directly with the Principal for labor or materials,* then this obligation shall be null and void; otherwise it

shall remain in full force and effect." (Emphasis supplied.)

The court held the condition of the bond "that if the principal shall faithfully perform the contract on his part and satisfy all claims and demands incurred for the same, and indemnify and save harmless the owner from all cost and damage which he may suffer by reason of failure so to do, and reimburse and repay the owner all outlay and expense which the owner may incur in making good such default", is for the benefit of and amply sufficient to protect the owner against liens and every other character of loss and expense, and it was unnecessary for his protection to add the clause "shall pay all persons who have contracts directly with the principal for labor and materials", since "the *contract* exempted the owner from any contractual liability to them." The court continued by stating that by such clause it was unquestionably intended to protect all such persons having contracts directly with the principal for labor or materials. *Wm. Cameron & Co. v. American Surety Co. of New York,* supra, and the cases cited therein. See also *Parker Roofing Co. v. Aetna Casualty & Surety Co.,* 55 S.W.2d 508 (Tex.Comm'n App.1932, judgment adopted); *Mosher Mfg. Co. v. Equitable Surety Co.,* supra; *American Surety Co. of New York v. Shaw,* supra.

The subject contract between George C. Cox and Dickson Drilling Company has a similar provision included therein protecting Cox from claims of materialmen or laborers. Said provision reads in part as follows:

"3.13 Protection Against Claims of Sub-Contractors, Laborers, Materialmen and Furnishers of Machinery, Equipment and Supplies. The CONTRACTOR (Dickson) agrees that he will indemnify and save the OWNER (Cox) harmless from all claims growing out of the lawful demands of sub-contractors, laborers, workmen, mechanics, materialmen and furnishers of machinery and parts thereof, equipment, power tools, and all supplies, . . . ."

Therefore, in view of the terms of the subcontract between George C. Cox, Inc. and Dickson Drilling Company, whereby Dickson agreed to protect and save harmless Cox from the claims of laborers and materialmen, it is clear by the inclusion in the performance-payment contractor's bond of the clause, "and shall pay all persons who have contracts directly with the principal for labor or materials," that it was intended to protect all such persons having contracts directly with the principal (Dickson) for labor or materials.

The appellant Parliament Insurance Company contends that the two Performance-Payment Contractor's bonds given by Dickson, as principal, to secure its performance and payment of the contract between it and Cox was strictly an indemnity bond for the contractor's (George C. Cox, Inc.) protection only and that it was not made for the benefit of materialmen, citing as its primary authorities: *Metropolitan Casualty Ins. Co. v. Texas Sand & Gravel Co.*, 68 S.W.2d 551 (Tex.Civ.App.—Waco 1934, writ dism'd) and *Employers' Liability Assur. Corporation v. Trane Co.*, 139 Tex. 388, 163 S.W.2d 398 (Tex.Comm'n App.1942, opinion adopted). These decisions, however, are clearly distinguishable from the case at bar in that there exists different circumstances together with the fact that the language of the defeasance clause in the bond in those cases differ materially from that clause contained in the bonds before us.

In *Metropolitan Casualty Ins. Co. v. Texas Sand & Gravel Co.,* supra, the plaintiff having furnished labor and material to a subcontractor on a public works project sought to recover on the bond given by the subcontractor to the original contractor. The bond there was a statutory performance bond as provided for in Article 5160 Tex.Rev.Civ.Stat.Ann. (1971) and contained the following condition:

"The condition of this obligation is such that if the bounded principal, . . . shall in all things well and truly perform all the terms and conditions of the foregoing contract, . . . and shall pay all claims for labor performed and materials furnished . . . then this obligation is to be void . . . ."

The Waco Court held that the provision in the bond that the subcontractor "shall pay all claims for labor performed and materials furnished", was necessary for the protection of the original contractor and should be construed as inserted for his benefit and not for the benefit for third parties. The court based their decision on the fact that it was well settled that an original contractor who contracted with the State for the construction of a public highway was liable, upon compliance by the creditor with the terms of the statute (Article 5160), for the costs of labor and materials furnished to a subcontractor and used by him in the construction of the road. It is important to note here, the absence of a contractual provision like that found in the case at bar, protecting the contractor from claims of laborers and materialmen. It was obviously necessary for the Waco Court to construe the clause "and shall pay all claims for labor performed and materials furnished" as necessary for the complete protection of the named payee and not as inuring to the benefit of laborers and materialmen. See *Wm. Cameron & Co. v. American Surety Co. of New York,* supra.

The performance-payment contractor's bond sued on here contains certain clauses in addition to those contained in the bond before the Waco Court. The subject bond provides further: that the principal "shall fully indemnify and save harmless the obligee from all cost and damage which the obligee may suffer by reason of failure so to do and shall fully reimburse and repay the obligee all outlay and expense which the obligee may incur in making good any such default . . . ." The *Metropolitan Casualty* case, therefore, is no authority for appellant's contention.

The *Employers' Liability Assur. Corporation v. Trane Co.,* supra, is also distinguishable and is no authority for appellant's con-

tentions. There, the plaintiff brought an action against the surety on a subcontractor's bond (Article 5160 Bond) to recover an amount due for materials sold to the subcontractor by plaintiff. Included within the contract between the general contractor and the subcontractor was a provision whereby the subcontractor agreed to pay for all labor and materials used and protect the owner and original contractor from these claims. Thus, there existed a provision in the contract like that in the *Wm. Cameron* case between the contractor and subcontractor protecting the contractor from claims of laborers and materialmen. However, the bond sued on contained a defeasance clause much unlike the defeasance clause existing in the case at bar containing no such protective clause. That clause reads in part as follows:

> "If the said principal shall well, truly and faithfully keep and perform all of the terms, provisions, covenants and conditions of the foregoing contract . . ., then this obligation shall be void."

The court held that the obligation of the principal to pay for labor and materials (contained in the contract) was made by reference a part of the condition stated in the bond and, therefore, the substance of the defeasance clause was thus construed to mean that if the principal shall perform the terms and conditions of the contract and pay for all labor and materials used and required and protect the contractor and owner from all claims, then the obligation shall become null and void. The court after making such a construction held that the provision in the contract between the original contractor, and the subcontractor, that the latter shall pay for all labor and materials, made by reference a part of the defeasance clause in the bond, was necessary for the complete protection of the original contractor. Such clause was made necessary for the complete protection of the original contractor by the fact that no other provision in the bond existed protecting the contractor. Again, this case is not controlling, because the language of the defeasance clause differs materially from that contained in the bond now before us.

■ We pause to note the Texas rule that all doubts in the construction of the bond must be resolved against the surety. *National Surety Corporation v. Rauscher, Pierce & Co.,* 369 F.2d 572 (C.C.A. 5th Cir. 1967); *Fidelity & Deposit Co. of Maryland v. Central State Bank of Dallas,* 12 S.W.2d 611 (Tex.Civ.App.—Waco 1928, no writ); *First State Bank of Temple v. Metropolitan Casualty Ins. Co. of New York,* 125 Tex. 113, 79 S.W.2d 835 (1935).

■ In connection with the surety's intent in executing the bond, the construction contract between Cox and Dickson should be considered. The contract required Dickson to guarantee payment to all materialmen. The intent then is to be determined by the terms of the bond construed in light of the contract in connection with which it was executed. 17 Am.Jur.2d Contractors' Bonds § 17 (1964). Here, the contract was expressly made a part of the bond. The defendant surety company had knowledge of the provision contained therein which included the promise by Dickson to protect Cox from all claims of materialmen and laborers (such as plaintiff herein). Having such knowledge, it is clear to us that the defendant surety company by including in the bond the specific clause: "shall pay all persons who have contracts directly with the principal for labor or materials", intended that this specific clause was inserted for the protection of the materialmen. The part of the title of the bond (i. e. "Payment") would not have been inserted by the surety company if this was not so, as it would have been a misleading label.

There has been a vast amount of litigation on the subject of the liability of a surety company on such a bond. In other jurisdictions where the same form of bond in identical language (excepting the heading in some instances) was under consideration, it was held that those who furnished material to the subcontractor were entitled

to recover thereon. See *Pittsburgh Plate Glass Co., Inc. v. Fidelity & Deposit Co. of Maryland,* 193 N.C. 769, 138 S.E. 143 (1927); *Mansfield Lumber Co. v. National Surety Co.,* 176 Ark. 1035, 5 S.W.2d 294 (1928); *Aetna Casualty & Surety Co. v. United States Gypsum Co.,* 239 Ky. 247, 39 S.W.2d 234 (1931); *Johnson Electric Co. v. Columbia Casualty Co.,* 101 Fla. 186, 133 So. 850 (1931); *Fidelity & Deposit Co. of Baltimore, Md. v. Rainer,* 220 Ala. 262, 125 So. 55 (1929); *Hartford Accident & Indemnity Co., Hartford, Conn. v. W. & J. Knox Net & Twine Co.,* 150 Md. 40, 132 A. 261 (1926); *Byram Lumber & Supply Co. v. Page,* 109 Conn. 256, 146 A. 293 (1929); *Thompson Yards v. Van Nice,* 59 S.D. 306, 239 N.W. 753 (1931); *La Salle Iron Works, Inc. v. Largen,* 410 S.W.2d 87 (Mo.Sup.Ct.1967). See also 77 A.L.R. 21, 56; 118 A.L.R. 57, 65; 17 Am.Jur.2d Contractor's Bonds § 18 (1964).

■ We hold that the defendant surety company intended to issue a payment bond for the benefit of the materialmen as the contract provided. We further hold that the bond as written, in any event, was for the benefit of the plaintiff materialmen. Appellant's points of error 1–6 are overruled.

In appellant's points of error 7 through 14, it contends that if in fact the performance-payment contractor's bond inures to the benefit of the plaintiff materialmen, the bond covers only those materials furnished to Dickson after the execution of the bond (August 14, 1972). It is stipulated by the parties that sometime around July 3, 1972 plaintiff Foster sold and delivered materials to Dickson, valued at $8,137.63, plus $59.61 freight charges, to be used on the W.C.I.D. 109 project; and that plaintiff Smith sold and delivered $8,076.92 worth of materials to Dickson at some time prior to August 14, 1972, to be used on the W.C.I.D. 109 project. The surety company, therefore, contends that it is not liable for such materials furnished to Dickson prior to August 14, 1972 when the defendant surety

executed the performance-payment contractor's bond.

The plaintiffs assert first that the surety company's contention that it is not liable for materials furnished the subcontractor prior to the execution date of the bond constitute an affirmative defense of avoidance and was waived by its failure to plead the same. Plaintiffs further assert that even if such point is properly in the case, the authorities hold that if the materials were actually incorporated in the job it is immaterial whether the materials were furnished to the subcontractor prior to or after the date of the bond. We agree with both contentions.

■ The surety company did not plead that it was not liable on its performance-payment contractor's bond for certain materials furnished to the principal because the material was furnished prior to the bond being executed. Such an assertion is an affirmative defense that must be pleaded otherwise it is waived. Since this defense of avoidance was not pleaded, it was waived. Rule 94, T.R.C.P.; *Manes Construction Company v. Wallboard Coatings Company,* 497 S.W.2d 334 (Tex.Civ.App.—Houston [14th Dist.] 1973, no writ); See also *Petroleum Anchor Equipment, Inc. v. Tyra,* 419 S.W.2d 829 (Tex.Sup.1967); *Mercantile National Bank at Dallas v. Electrical Supply Corporation,* 434 S.W.2d 907 (Tex. Civ.App.—Dallas 1968, writ ref'd n. r. e.); 2 McDonald's Texas Civil Practice § 7.34.1 et seq.

■ It has been held that, where the bond of the subcontractor inures to the benefit of the laborers and materialmen, it is immaterial if some of the materials were furnished to the principal contractor prior to the execution of the bond, so long as such labor and materials were used in the performance of the work which was covered by the subcontract. *Reed v. Maryland Casualty Company,* 244 F.2d 857 (C.C.A. 5th Cir. 1957); 13 Couch on Insurance 2d § 47:188 (1965). It is undisputed that the materials in question which were furnished to Dick-

son, were used on the project. There was nothing in the bond which would exclude payment for materials that were used on the project, if they were furnished or purchased prior to the bond being executed.

Appellant contends that this case is governed by the general rule that a contract of surety is not retrospective in its operation and no liability attaches to the surety for *defaults* occurring before it is entered into, unless an intent to be so liable is indicated. Citing 74 Am.Jur.2d § 30 Suretyship; 72 C.J.S. Principal and Surety § 108. This argument has no merit since there is no evidence of a default by Dickson prior to the date the bond was executed. Appellant's points of error Nos. 7–14 are overruled.

The surety company in its points of error 15 through 22 asserts that there was no evidence to support the jury's answers to the special issues and that the jury's answers thereto were against the greater and overwhelming weight of the credible evidence.

Where the contention on appeal is that there is no evidence to support the jury findings, it is the duty of the reviewing court to view the evidence in its most favorable light, considering only the evidence and inferences which support the finding, and rejecting the evidence and inferences which are contrary to the findings. *Butler v. Hanson,* 455 S.W.2d 942 (Tex.Sup.1970); *Garza v. Alviar,* 395 S.W.2d 821 (Tex.Sup. 1965); Calvert, "No Evidence" and "Insufficient Evidence" Points of Error, 38 Tex.L. Rev. 361 (1960). The "against the great weight" points require us to review and weigh all evidence. *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660 (1951).

The record reflects that prior to furnishing Dickson materials for the two subject projects, Dickson owed the plaintiffs outstanding balances that were unpaid. Dickson made several payments to plaintiff Foster; one being on April 19, 1972, in the amount of $2,683.96 and another on June 22, 1972, in the amount of $2,630.34, plus a

$1,000.00 payment on August 1, 1972. The proof also shows that Dickson made payments to plaintiff Smith; one in the amount of $2,335.52 on June 23, 1972, and another in the amount of $4,060.57 on July 8, 1972.

The surety company contends that when payments are made from the proceeds or fruits of the very contract, business or transaction covered by the obligation of a surety, and when the source of the funds are known to the creditor or person receiving the same, the surety is entitled to have the payments applied to the discharge of the debt for which he is bound, even though application has been made by the creditor otherwise. Citing *Aetna Casualty & Surety Co. v. Hawn Lumber Co.,* 128 Tex. 296, 97 S.W.2d 460 (1936). This case is not controlling. The evidence shows that the plaintiffs did not know the source of the payments, nor did they receive any instructions or directions on how such payments were to be applied. See also *Munn v. Riggs,* 257 S.W.2d 714 (Tex.Civ.App.—Amarillo 1953, no writ).

Miss Krahl, the credit manager of L. B. Foster Company, testified that these payments were received from Dickson, but that there were no instructions as to what invoices they were to be applied to or any information as to the source of these funds. The amount of the payments did not match any particular invoice. They were, therefore, applied to the oldest accounts, leaving the invoices for materials supplied on the water district projects unpaid.

Betty Wright, the assistant office manager for Howard Smith Company, testified that the payments which they received from Dickson were received without instructions or directions as to how they should be applied. She stated that she credited them to the balance of the account (oldest unpaid portion of account) since the checks did not equal any combination of any invoices. It is, therefore, clear that there is ample evidence to support the

jury's findings to the special issues that an officer, employee, or an agent of both plaintiffs did not know the source of those payments and should not have known.

Having considered all of the evidence the surety company's points of error Nos. 15–22 are overruled.

Judgment of the trial court is affirmed.